# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 50087 | **DATE** | 11/6/2008 |
| **CASE TITLE** | Raymundo v. Winnebago County et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's motion for class certification [28] is denied.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

### I. BACKGROUND

On April 29, 2008, plaintiff, Rosemary Raymundo, both individually and on behalf of individuals similarly situated, filed a four-count, second-amended complaint against defendants, Winnebago County, the Winnebago County Sheriff's Office, Sheriff Richard A. Meyers, and Andrea Tack, the Superintendent of the Winnebago County Jail. In her complaint, plaintiff alleges that, over a several-year period, Winnebago County and the Winnebago County Sheriff's Office had a written policy of illegally strip-searching thousands of new detainees. According to plaintiff, this policy mandated strip searches of new detainees charged only with non-felony offenses that did not involve weapons or a controlled substance. Specifically, plaintiff alleges that on or about January 8, 2007, she was arrested on an outstanding warrant for failing to appear for a court date on charges of transporting a child without an appropriate child restraint system, 625 ILCS 25/4. Plaintiff further alleges that, upon being placed into the custody of the Winnebago County Jail, she was ordered to remove her clothing, squat, cough, and spread her vagina. Plaintiff also alleges one of the correctional guards then lifted her breasts. Plaintiff alleges that at no time did she give her consent for this search.

Plaintiff asserts that defendants' strip-search policy, as it relates to those charged with non-felony offenses not involving weapons or controlled substances, violates the Fourth and Fourteenth Amendments of the United States Constitution. Accordingly, plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages for herself and all those individuals similarly situated, and a declaratory judgment finding defendants' written strip-search policy unconstitutional.

Plaintiff now moves this court for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiff proposes the following class for certification:

> All persons who were charged only with non-felony offenses not involving weapons or a controlled substance, and who were subjected to a strip and/or visual body cavity search as a new detainee at the Winnebago County Jail at any time on or after May 14, 2005 but before April 27, 2007.

**STATEMENT**

II. DISCUSSION

District courts have broad discretion to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. Chavez v. Ill. State Police, 251 F.3d 612, 629 (7th Cir. 2001). To obtain class certification, a plaintiff must satisfy all four requirements of Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law of fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy of representation). Fed. R. Civ. P. 23(a); Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006), cert. denied, 127 S. Ct. 2952 (2007). Even if a plaintiff meets all of the Rule 23(a) requirements, he or she also must satisfy one of the requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b). In this case, plaintiff seeks certification pursuant to Rule 23(b)(3), which requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to the express requirements of Rule 23, courts also have recognized the implicit requirement that the definition of the proposed class must be "precise, objective and presently ascertainable." Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 614 (W.D. Wis. 2003) (quotation marks omitted).

A class may only be certified if the trial court is satisfied after rigorous analysis that these prerequisites have been satisfied. Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003). "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001).

In response to plaintiff's motion, defendants' primary argument is that plaintiff's class definition lacks definiteness because an individual inquiry needs to be made in order to identify each member of the class. Defendants suggest that in order to identify a class member each inmate's individual file would have to be searched, and this individual inspection will be extremely burdensome. Related to this initial argument, defendants contend that because of the necessity of individual inspection, plaintiff has failed to show numerosity, commonality, typicality or that the questions common to the class predominate. Defendants also argue that plaintiff fails to adequately represent the class. The court will first review the factors of definiteness and numerosity, and then turn to the remaining 23(a) factors and the requirements of Rule 23(b)(3).

A. Definiteness

Because "the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class." Alliance to End Repression v. Rochford, 565 F.2d 975, 977 n.6 (7th Cir. 1977), abrogated on other grounds by Rahman v. Chertoff, 530 F.3d 622 (7th Cir. 2008). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Lau v. Arrow Fin. Servs., LLC, 245 F.R.D. 620, 624 (N.D. Ill. 2007) (quotation marks omitted). "Plaintiff need not identify each class member to secure class certification." Id.

Relying on Sadler v. Midland Credit Mgmt., Inc., No. 06 C 5045, 2008 WL 2692274 (N.D. Ill. July 3, 2008), defendants argue that plaintiff's class lacks definition because an extensive search of individual records would be necessary to discover the identity of each member of the class. In Sadler, the plaintiffs brought claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e. Id. at *1. The plaintiff's class definition included five criteria for class membership, the fifth of which stated that a person was a member of the class only if "[d]efendants cannot produce a writing that identifies the parties, states the date of the agreement, contains the parties' signatures, and sets forth the terms of the parties' agreement." Id. at *3. The Sadler court denied class certification, in part, because the class definition required an exhaustive, individualized inquiry into whether the

defendant could find the written contract. Id. at *5. The court also considered that it was very difficult to identify class members in a systematic way using the defendants' database. Id. at *4. The court concluded that "the difficulty of determining whether any account falls into the proposed class renders class treatment of this case unmanageable." Id. at *6.

However, the court finds Ramirez v. Palisades Collection LLC, 250 F.R.D. 366 (N.D. Ill. 2008) and Lau more instructive than Sadler. In Ramirez, the plaintiff's original complaint virtually mirrored that in Sadler, however, once the plaintiffs removed the part of the class definition that burdened the defendants with the production of certain documents, the court found the criteria was "sufficient to identify class members." Ramirez, 250 F.R.D. at 370. In Lau, another FDCPA case, the court found that an inquiry into class members' records to determine whether they fulfilled the objective criteria was not so daunting as to make the class definition insufficient. Lau, 245 F.R.D. at 624. The court noted that "courts in this district have previously certified classes in which the definition required investigation into various records to determine which individuals from a large population qualify for class membership." Id. (citing Gomez v. Ill. State Bd. of Educ., 117 F.R.D. 394, 397 (N.D. Ill. 1987) in which the court certified a class that required identification of all Spanish-speaking children eligible to enroll in public school in Illinois who should have been assessed for English proficiency.).

In this case, the court can define the class by assessing two objective criteria, whether each claimant: (1) was charged only with a non-felony offense not involving weapons or a controlled substance, and (2) was subjected to a strip and/or visual body cavity search as a new detainee at the Winnebago County Jail at any time on or after May 14, 2005 but before April 27, 2007. Unlike Sadler, in this case, the defendants' ability to produce documents is not part of the class definition. Rather, like Ramirez and Lau, while many documents may have to be searched to ultimately find the names of individuals in the class, the factors defining the class are objective and well-defined.

Moreover, many courts in this Circuit have readily certified similar classes of plaintiffs in actions based on strip searches by city or county officials. See Young v. County of Cook, No. 06 C 552, 2007 WL 1238920, at *9 (N.D. Ill. Apr. 25, 2007) (certifying class of "all persons charged only with misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail"); Bullock v. Sheahan, 225 F.R.D. 227, 230 (N.D. Ill. 2004) (certifying class of "[a]ll male inmates who, on or after February 12, 2002, have been subjected to defendants' policy, practice and custom of strip searching, without reasonable suspicion that the inmate is concealing a weapon or other contraband . . . following their return from court after there is a judicial determination that there is no longer a basis for their detention"); Calvin v. Sheriff of Will County, No. 03 C 3086, 2004 WL 1125922, at *1 (N.D. Ill. May 17, 2004) (certifying class of those "[a]rrested on a warrant issued for failure to appear in a misdemeanor or traffic case and, following arrival at the Will County Jail, is or was strip searched without any individualized finding of reasonable suspicion or probable cause that he was concealing contraband or weapons"); Blihovde, 219 F.R.D. at 623 (certifying class of citizens "arrested for misdemeanors or ordinance offenses unrelated to weapons or illegal drugs who were required by officers at the St. Croix County jail to remove their clothing for visual inspection" during the specified time period); Gary v. Sheahan, No. 96 C 7294, 1999 WL 281347, at *1 (N.D. Il1. March 31, 1999) (acknowledging previous certification of class of all female inmates subjected to a strip search at the Cook County Jail upon returning to Jail from court after a judicial determination that there is no longer a basis for their detention). Although the record keeping systems of the institutions is not specifically outlined in those cases, these suits would also have required an investigation of many jail records, yet courts have not hesitated to certify such classes.

Accordingly, for the foregoing reasons the court rejects defendants' argument that the class is not definite.

**STATEMENT**

B. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[P]laintiffs are not required to specify the exact number of persons in the class." Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir. 1989); see also Steinbrecher v. Oswego Police Officer Dickey, 138 F. Supp. 2d 1103, 1106 (N.D. Ill. 2001). An approximation of the proposed class size may be based on common-sense assumptions and estimates. Jenkins v. Mercantile Mortgage Co., 231 F. Supp. 2d 737, 744 (N.D. Ill. 2002). However, a plaintiff cannot simply rely on conclusory allegations that joinder is impractical or upon speculative allegations as to the size of the class to satisfy numerosity. Marcial, 880 F.2d at 957; Steinbrecher, 138 F. Supp. 2d at 1106. Although there is no "magic number" for numerosity purposes, joinder is considered impractical when a class numbers at least forty members. See Swanson v. Am. Consumer Indus., 415 F.2d 1326, 1333 n.9 (7th Cir.1969); Steinbrecher, 138 F. Supp. 2d at 1106.

In this case, both plaintiffs and defendants agree that 16,000 to 16,500 individuals are booked in the Winnebago County Jail each year. The class period spans approximately two years. The issue here is how many of those individuals fall into the class identified by plaintiff. Plaintiff conducted an initial review of documents that listed the name of each individual booked in the Jail from May 13, 2005 to January 23, 2008, (Plaintiff's Exhibit E). The total number of individual entries was 172,215.[1] Plaintiff reviewed approximately 440 of these entries and narrowed the field based on the offense committed and whether the individual was brought in on a bench warrant. Plaintiff found 48 individuals whom she believed satisfied the criteria. Plaintiff has submitted these 440 entries to the court, as well as a list of those 48 she identified. Defendants reviewed their files of these individuals and have challenged 15 of the entries, leaving 33 members of the class discovered in the first 440 of 172,215 entries.

Defendants argue that plaintiff has not met her burden for numerosity because it will be difficult to identify an individual as a member of the class without examining their individual file. However, defendants do not dispute that if such a specific inquiry were made, the number of class members would far exceed forty, and would be so numerous that joinder of all members would be impractical. There is no dispute that 33 members of the class were found just in the first 440 entries of names of those booked in the Jail from May 13, 2005 to January 23, 2008. Plaintiff is not required to specify the exact number of persons in the class. Although the court recognizes plaintiff's method of identifying class members is not exceptionally precise,[2] common sense dictates that, given the number of class members plaintiff identified in her small sample, it is likely that there are enough individuals, at least forty, that fit the class definition.

C. Remaining Factors

Rule 23(a) also requires the existence of questions of law or fact common to the class, and that a plaintiff's claim be typical of those of the class members she represents. Fed. R. Civ. P. 23(a)(2)-(3). The factors of commonality and typicality are closely related. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Keele, 149 F.3d at 594 (quotation marks omitted). A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." Id. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Id. (quotation marks omitted).

The court rejects defendants' arguments as to the elements of commonality and typicality. Defendants again argue that these elements cannot be met because of the laborious task of searching individual files to determine whether an individual is part of the specified class. Yet defendants do not point to any reason plaintiff's claims are not common to, or typical of, the class defined. Defendants also seem to equate the class

**STATEMENT**

definition with the list of all those admitted to the Jail, asserting that plaintiff's claims are not typical of class members who were not strip searched or were arrested on felony charges. However, individuals who have not been strip searched or who were arrested for felony offenses are outside of the defined class. The court's inquiry is not whether plaintiff's claim is common to and typical of all inmates booked in the Jail, but rather whether plaintiff's claims are common to and typical of the class she has identified. Plaintiff's Exhibit E was not meant to be a list of class members, but rather used to help show the number of individuals out of the total processed that met the class criteria. As such, the court cannot agree with defendants' reasoning.

That being said, this court is charged with conducting its own rigorous analysis of the prerequisites for class certification. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Davis, 321 F.3d at 649. In doing so, the court may look beyond the pleadings in order to fulfill its obligation to find actual, not presumed, conformation with Rule 23. See Davis, 321 F.3d at 649 (concerning Rule 23(a)); Szabo, 249 F.3d at 677 (concerning Rule 23(b)). In this case, plaintiff claims that commonality exists because defendants have engaged in standardized conduct towards the members of the proposed class, and because the class members all challenge the same policy of the Jail. However, upon further review, it does not appear that the Jail applied the same policy to all members of the class.

Although not cited in the complaint, plaintiff and defendants do not dispute that the policy at issue states:

1. Except as provided in the immediately following paragraph (I.2), all persons booked into the WCCF, who will be housed in the Facility in other than a temporary holding area, shall be strip searched prior to receiving the jail issued uniform and being placed into population.

2. No person arrested for a traffic, regulatory, or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is a reasonable belief that the individual is concealing a weapon or controlled substance. (This prohibition against strip searching does not apply, however, when the arrestee is being taken into custody by or remanded to the Sheriff pursuant to a court order, i.e. bench warrant, mittimus, warrant).

Plaintiff admits that "[t]he crux of this case stems from the sentence in parentheses at the end of paragraph 2" pertaining to "strip search detainees brought in on court orders, i.e. bench warrant, mittimus, or warrant."

Despite plaintiff's acknowledgment that the crux of her claims regards only the part of the policy pertaining to those individuals brought in on court orders, the class includes "all persons who were charged only with non-felony offenses not involving weapons or a controlled substance, and who were subjected to a strip and/or visual body cavity." (Emphasis added). In her brief, plaintiff concedes that her class definition expands beyond those affected by the policy asserted in the parenthetical statement, yet reasons "the majority of its class will fall into that category [of people brought in on court orders] because the policy explicitly states that those individuals are to be strip searched."

However, the court does not find this reasoning ameliorates its concerns about commonality and typicality. Essentially, the class, as it is currently defined, contains members who have been strip-searched under two very distinct policies: one group of individuals arrested for traffic, regulatory or misdemeanor offenses, who were to be strip-searched pursuant to a finding of individualized suspicion; and one group of individuals arrested pursuant to court order who were searched without any inquiry into individualized suspicion.[3] The constitutionality of these distinct policies raises different legal issues. Moreover, plaintiff's claims are not typical of those individuals in the first group, whose strip searches do not arise from a written policy of strip searching regardless of individualized suspicion. Because these two distinct groups are present in the class, the court cannot say with certainty that plaintiff's constitutional challenge is common to or typical of all, or even a majority of, the class members as plaintiff suggests.[4]

**STATEMENT**

More importantly, even if this court could find commonality and typicality were met here, the current class does not fulfill the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods of adjudicating the class claims. Fed. R. Civ. P. 23(b)(3). The predominance criterion of Rule 23(b)(3) is "far more demanding" than rule 23(a)(2) commonality. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). Usually, when a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue. Blihovde, 219 F.R.D. at 620. However, in this case, class members would be challenging two divergent policies rather than one uniform one. The court would have to make an individual review of whether each class member was brought in on a bench warrant or arrested for a traffic, regulatory, or misdemeanor offense.

Moreover, as the class is currently defined, this court will likely have to make individual inquiries as to each search that will predominate over the questions common to the class. In similar cases involving strip search policies, courts have considered whether individualized inquiries into the legality of each search would predominate over the class challenge to the overall policy. In response to this issue, these courts have reasoned that where jail personnel never undertook any reasonable suspicion or probable cause inquiry "the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry . . . ." Calvin, 2004 WL 1125922, at *4; see also Young, 2007 WL 1238920, at *8. Accordingly, these courts concluded that individualized inquiries into reasonable suspicion did not dominate the case. However, that reasoning does not apply in this case because plaintiff's proposed class includes individuals who were subject to a written policy requiring a finding of individualized suspicion. Nor does plaintiff allege any practice different from the written policy. As a result, at minimum, the claims of the first group would require an individual evaluation of reasonable suspicion that would dominate over class claims. Accordingly, plaintiff has not met the predominance requirement of Rule 23(b)(3).[5] Thus, plaintiff's motion for class certification is denied.

The court notes that this order is without prejudice to plaintiff filing another motion for class certification that remedies the issues discussed above.[6]

1. There are often multiple entries for one person.

2. For example, the 172,215 entries cited by plaintiff include names of those booked in the eight months following the end of the proposed class period.

3. Conceivably, the first group could also be considered two separate classes, those arrested for regulatory or misdemeanor offenses who were strip searched pursuant to reasonable suspicion and those who were not.

4. The "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria . . . ." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quotation marks omitted). As a result, the same reasoning would apply to that factor. Consequently, the court need not separately consider defendants' arguments regarding this factor.

5. Because plaintiff's class does not meet the Rule 23(b)(3) factors for these reasons, the court need not consider the issue of individualized damage inquiries.

6. Although the court did not review the adequacy of counsel in this order, if plaintiff files another motion for class certification, the court instructs plaintiff to attach some documentation, (such as a list of previous cases or past experience) to aid in this court's assessment pursuant to Rule 23(a)(4),

of plaintiff's counsel's ability to adequately protect the interests of the class. See <u>Retired Chi. Police Ass'n v. City of Chi.</u>, 7 F.3d 584, 598 (7th Cir. 1993).