IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY RAYMUNDO, both Individually and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 07 C 50087 |
| WINNEBAGO COUNTY, WINNEBAGO COUNTY SHERIFF'S OFFICE, RICHARD A. MEYERS, both individually And in his official capacity as Sheriff of Winnebago County, Andrea Tack both Individually and in her capacity as Jail Superintendent of the Winnebago County Jail, | ) ) ) ) ) ) ) ) ) ) | Judge Kapala Magistrate Judge Mahoney |
| Defendants. | ) | |

## **DEFENDANTS' MOTION FOR JUDGMENT PURSUANT TO RULE 12(c)**

Defendants, WINNEBAGO COUNTY, WINNEBAGO COUNTY SHERIFF'S OFFICE, RICHARD A. MEYERS, both individually and in his official capacity as Sheriff of Winnebago County, and ANDREA TACK, both individually and in her capacity as Jail Superintendent of the Winnebago County Jail, by their attorneys, TRIBLER ORPETT & MEYER, P.C. and the WINNEBAGO COUNTY STATE'S ATTORNEY'S OFFICE, move this Court for an order granting judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In support of this motion, Defendants state the following:

## **INTRODUCTION**

1.  Plaintiff's Second Amended Complaint is a four-count complaint alleging the following: Count I – unreasonable search, violation of due process, and failure to implement county policies to avoid constitutional depravations under color of state law; Count II –

declaratory judgment; Count III – deliberate indifference to training and supervision; and Count IV – state law indemnification claim pursuant to Section 9-102. (*See* Exhibit A, Plaintiffs' Second Amended Complaint.)

2. Count II of Plaintiff's Second Amended Complaint demands that this Court issue a declaratory judgment on behalf of Plaintiff and members of the class that the "strip search policy of Winnebago County and the Winnebago County Sheriff's Office" is unconstitutional. (*See* Exhibit A, ¶ 45.)

3. Plaintiff contends that "the Fourth Amendment of the United States Constitution protects citizens from unreasonable searches by law enforcement officers, and prohibits officers from conducting strip searches of new detainees charged only with non-felony offenses not involving weapons or a controlled substance." (*See* Exhibit A, ¶ 35.)

4. Plaintiff further contends that the Winnebago County Sheriff's Office policy from May 14, 2005 through April 27, 2007, providing for a strip and/or visual body cavity search of all persons who were charged with only non-felony offenses not involving weapons or a controlled substance and who were detained at the Winnebago County Jail and placed in general population from May 14, 2005 through April 27, 2007 was "clearly illegal" and "contrary to clearly established law." (*See* Exhibit A, ¶ 2.)

5. Unlike several other strip search cases in this district, Plaintiff challenges the constitutionality of the policy itself and not the scope or method of strip searching detainees. (*See* Exhibit A, ¶¶ 1, 2, 45; Exhibit B, June 10, 2009 order; and Exhibit C, Plaintiffs' Second Motion for Class Certification, p. 2.)

6. Indeed, this Court confirmed that "Plaintiff's claims primarily arise from the officer's act of strip searching … and not from the method of strip-searching." (*See* Exhibit B.)

7. Plaintiff concedes that the crux of this case pertains to strip searching detainees brought in on court orders, i.e. bench warrant, mittimus or warrant. (*See* Exhibit B.) The class of individuals certified by this Court applies to all detainees, and not just those brought in on court orders. (*See* Exhibit B.)

8. Plaintiff filed a Motion to Amend Class Definition. Defendants seek a ruling on the constitutionality of the policy before this Court considers amending the class definition, sending class notice or proceeding further in the interests of judicial economy and expense of the parties. This is consistent with Count II of Plaintiff's Second Amended Complaint seeking a declaratory judgment as to the constitutionality of the policy.

9. Defendants move for judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure declaring that the Winnebago County Corrections' (WCC) policy applicable on May 14, 2005 is constitutional.

## WINNEBAGO COUNTY CORRECTIONS POLICY

10. On June 10, 2009, this Court granted Plaintiff's Second Motion for Class Certification, certifying the following class:

> All persons who were arrested for only non-felony offenses that did not involve weapons or a controlled substance, and for whom there was no finding of a reasonable belief that the individual was concealing a weapon or controlled substance, but who were nonetheless subjected to a strip and/or visual body cavity search as a new detainee at the Winnebago County Jail at any time on or after May 14, 2005.

(*See* Exhibit B.)

11. This Court relied upon Plaintiff's initial Motion for Class Certification in determining the applicable WCC policy during the subject time period of May 12, 2005 through April 27, 2007. (*See* Plaintiff's Motion for Class Certification attached as Exhibit D, p. 3.)

12. Unfortunately, there was some confusion between the parties as to the applicable policy at the time of Ms. Raymundo's detention. The policy cited in the June 10, 2009 order was not the policy applicable at the time of Ms. Raymundo's detention.[1]

13. Regardless of any prior confusion as to the applicable policy, Sergeant Sodergren clearly testified that the WCC policy applicable at the time of Ms. Raymundo's detention provided that persons detained pursuant to a court order (i.e. bench warrant, mittimus, or warrant) would only be strip searched if they were going to be housed in general population. A detainee who is not housed in the facility, and only detained in a temporary holding area waiting to post bond, would not be strip searched. (*See* Exhibit D, Sodergren's Deposition also marked as Exhibit D, pp. 22-23.)[2]

14. Sodergren's testimony is consistent with the language of the April 15, 2005 policy applicable during the subject time period:

> I.  Strip searches shall be conducted by a staff member of the same sex as the person being searched.
>
>    1.  Persons remanded to the Sheriff pursuant to a court order, (i.e. bench warrant, mittimus, warrant) and who will be housed in the Facility <u>in other than a temporary holding area</u>, shall be strip searched prior to receiving the jail issued uniform and being placed into population.

(*See* Exhibit D, Sodergren's deposition transcript also marked as Exhibit D, pp. 19, 22-24 and attached Sodergren's Deposition Exhibit 2 - the April 15, 2005 policy, p. 3.)

15. The procedure for strip searching detainees is outlined in Plaintiff's Motion for Class Certification and Defendants' Response to Plaintiffs' Motion. (Exhibit D, p. 4 and Exhibit

---

[1] This issue is fully addressed in Defendants' Motion from Relief from Judgment filed contemporaneously with the instant motion.
[2] Plaintiff's Motion for Class Certification included, and incorporated the deposition transcript of Sergeant Timi Sodergren within her motion. Plaintiff's motion attached an incomplete copy of the transcript. Defendants have included a complete copy of Sodergren's deposition transcript within the exhibits.

E, Defendants' Response to Plaintiff's Motion for Class Certification, pp. 2-3.) The following is the procedure for strip searching detainees placed in general housing of the jail's facility:

> The method of strip searching detainees is uniform by sex. The policy dictates that males are searched by males, and females by females. The men were first taken to a "shower/property room" at the main jail. There, they were asked to disrobe completely. They must then bend over and spread their legs, lift their testicles, and then to (sic) open their mouths. Women were first taken to the shower room at the satellite (sic) jail. They were asked to disrobe completely. Then the women were asked to lift their breasts and then squat and cough as well as open their mouths.

(*See* Exhibit D, p. 4, Andrea Tack's Deposition marked as Exhibit C, pp. 21, 24-25.)

16. "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell v. Wolfish*, 441 U.S.520, 559 (1979). Prison officials must be "ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today." *Hudson v. Palmer,* 468 U.S. 517 (1984).

17. The WCC policy was enacted to maintain a safe and secure living and work environment for inmates and staff. (*See* Exhibit E, p. 2., and Exhibit D, Sodergren's deposition transcript also marked as Exhibit D, p. 47.) The policy was modeled and conducted in compliance with Section 701.40(f) of the Illinois Administrative Code which mandates strip searches of detainees and does not require individualized reasonable suspicion except for the *probing* of body cavities. (*See* Exhibit E, p. 3 and 20 Ill. Admin. Code ¶701.40(f)(1) and (4).)

## JUDGEMENT SOUGHT BY DEFENDANTS

18. Defendants' policy, regardless of which policy applied during the time period, prohibited strip searches of temporary detainees not housed within the general jail population. Therefore, temporary detainees should not be included within the class definition of "all persons" as defined in this Court's June 10, 2009 order. Applying the definition certified by this Court,

Defendants seek judgment on the following issue: The WCC written policy is constitutional as to all temporary detainees not placed in general housing.[3]

19. Defendants also seek this Court to enter judgment as to Plaintiff's declaratory request for relief that: the WCC policy from May 14, 2005 through April 27, 2007 providing for a strip and/or visual body cavity search of all persons who were charged with only non-felony offenses not involving weapons or a controlled substance and who were detained at the Winnebago County Jail and placed in general population from May 14, 2005 through April 27, 2007 is constitutional, and not "contrary to clearly established law" as Plaintiff contends.

## ARGUMENTS

### I. TEMPORARY DETAINEES SHOULD BE REMOVED FROM THE CLASS DEFINITION OF "ALL PERSONS" BECAUSE THE WINNEBAGO COUNTY CORRECTIONS WRITTEN POLICY IS CONSTITUTIONAL AS APPLIED TO THEM.

20. Plaintiff must show that a municipal policy or custom was the "moving force" behind her alleged constitutional deprivation. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397; 117 S.Ct. 1382, 1388 (1997); *Polk County v. Dodson*, 454 U.S. 312 (1981).

21. A strip and/or visual body cavity search of temporary detainees is prohibited and contrary to the terms of the WCC policy. (*See* Exhibit D, Sodergren's deposition transcript also marked as Exhibit D, pp. 19, 22-24 and attached Sodergren's Deposition Exhibit 2, p. 3 of the

---

[3] Raymundo contends that she was strip searched, despite being placed in temporary holding. This claim involves different issues than whether the written policy as applied to temporary detainees is constitutional and not the subject of this motion.

6

April 15, 2005 policy.)[4]  Therefore, Defendants are entitled to judgment and a ruling that the WCC written policy as applied to temporary detainees is constitutional.

22. This ruling would remove temporary detainees from being considered within the class definition of "all persons" thereby leaving the class to consist of only those detainees placed into general population.

II. **THE WINNEBAGO COUNTY CORRECTIONS POLICY PROVIDING FOR A STRIP AND/OR VISUAL BODY CAVITY SEARCHES OF ALL PERSONS WHO WERE CHARGED WITH ONLY NON-FELONY OFFENSES NOT INVOLVING WEAPONS OR A CONTROLLED SUBSTANCE AND WHO WERE DETAINED IN GENERAL POPULATION FROM MAY 14, 2005 THROUGH APRIL 27, 2007 IS CONSTITUTIONAL AND NOT CONTRARY TO ESTABLISHED LAW.**

23. Plaintiff contends that "it has been well established in this judicial district that individuals charged only with non-felony offenses not involving weapons or a controlled substance cannot be strip searched absent some level of particularized suspicion or cause to believe that they possess contraband."  (*See* Exhibit A, ¶ 2.)

24. Plaintiff further contends that the WCC policy providing for strip searches of those charged with non-felony offenses not involving weapons or a controlled substance is "clearly illegal" and prohibited by the Fourth Amendment of the United States Constitution. (*See* Exhibit A, ¶¶ 2, 24.)

25. In support of these contentions, Plaintiff states that "this judicial circuit has stated repeatedly that state officials may not strip search these individuals, with this principle being clearly established in *John Doe, et al. v. Calumet City, Illinois, et al.* (754 F.Supp. 1211)."

26. Plaintiff's reference to other judicial district courts decisions such as *Doe* for her contention that the WCC is unconstitutional ignores the U.S. Supreme Court decision in *Bell v.*

---

[4] Defendants acknowledge that Raymundo claims she was strip searched as a temporary detainee despite the written policy prohibiting such activity.  Defendants seek judgment based upon the written policy itself, not whether Defendants complied with said policy.

7

*Wolfish*, 441 U.S. 520 (1979) and further ignores the differences between such cases and the instant case.

28. This case involves a corrections facility where detainees are placed in general population, not temporary holding in individual cells at a police department. The issue in this case is whether the written policy itself, and not the scope and manner of the strip search is constitutional. *Bell* applies and supports the constitutionality of the policy in the instant case.

28. In *Bell*, the Supreme Court upheld a policy of conducting visual body cavity searches of individuals housed at the Metropolitan Correction Center (MCC) against Fourth and Fifth Amendment challenges. *Bell,* 441 U.S. at 524, 99 S. Ct. 1861. The MCC housed convicted inmates, pre-trial detainees, witnesses in protective custody, and persons incarcerated for contempt of court. *Id.* The plaintiffs challenged the policy that detainees undergo a visual body cavity inspection as part of a strip search "after each contact visit with a person from outside the institution." *Id.* at 558, 99 S. Ct. 1861.

29. *Bell* applies to the instant case because Plaintiff, as in *Bell*, challenges Winnebago's strip and/or visual body cavity search contending that the policy itself violated her Fourth Amendment rights to be free from unreasonable searches. Furthermore, the entity performing these searches, the WCC, is similar to the entity in *Bell*, the MCC. Both are corrections and/or custodial facilities which house detainees placed into general population and who intermingle with other detainees, as opposed to a police department in which detainees are temporarily held in individual cells.

30. Furthermore, the type of individuals housed in the facility are similar. In the instant case, the type and/or class of individuals, which are the subject of this suit, are all persons

who were arrested for non-felony offenses that did not involve weapons or a controlled substance (*See* Exhibit B.)

31. The class of individuals in *Bell* included pre-trial detainees, as well as individuals who were simply witnesses in protective custody or incarcerated for contempt of court. *Id.* at 524. Therefore, some of the detainees housed in the MCC were not even charged with a criminal offense or with crimes involving weapons or controlled substances.

32. In *Bell*, the plaintiffs challenged the visual body cavity inspection as part of the strip search policy after every contact visit with a person from outside the institution. *Id.* at 558, 99 S. Ct. 1861. The strip search policy in *Bell* is similar to the instant case. *Id.* at 558 n. 39, 99 S.Ct. 1861. The Winnebago County policy is no more intrusive than that in *Bell*. The U.S. Supreme Court's decision in *Bell* applies to the instant case. There are few, if any, Northern District and/or Seventh Circuit cases in which the facts and issues are directly analogous to *Bell* and the instant case.

33. Defendants recognize that Northern District and Seventh Circuit courts have ruled that strip searching an individual without a particularized reasonable suspicion is unconstitutional in certain circumstances. In *Tinetti v. Wittke*, the Seventh Circuit ruled that the sheriff's strip search policy of searching all persons arrested for non-misdemeanor traffic violations without reasonable suspicion that the individual was carrying weapons or contraband violated their Fourth Amendment rights. 479 F.Supp. 486. However, *Tinetti* was a temporary detainee held for only two hours, and not placed into the jail's general population. *Id*. at 488. As *Bell* recognized, there are different security concerns with detainees placed in general population that are not present with temporary detainees. Therefore, *Tinetti* is not applicable to the instant case.

34. The district courts in *Young v. Cook County* and *Calvin v. Sheriff of Will County* both ruled that blanket strip searches performed by the defendants were unconstitutional without individualized reasonable suspicion that the individual may be concealing weapons or controlled substances. *Young v. Cook County*, 616 F.Supp.2d 834 (N.D. 2009) and *Calvin v. Sheriff of Will County*, 405 F.Supp.2d 933 (N.D. 2005.)

35. Both cases involved correctional facilities similar to that in this case, however, the court in both cases made clear that the plaintiff's constitutional challenge was not to the written policy itself, but instead to the scope and/or manner of the search. *See Mercado v. Dart*, 2010 WL 1688528 (7th Cir. 2010) ("[t]he district judge concluded that, because the class's claims arise from the manner rather than the fact of these searches, the holding in *Bell v. Wolfish* … does not vindicate the Sheriff's position.") *Calvin*, 405 F.Supp.2d at 938 ("Plaintiffs argue that the *scope* of searches … was not justified.") (emphasis added.)

36. *Young* and *Calvin* both cite other authority such as *Doe v. Calumet City*, 754 F.Supp. 1211 (N.D. 1990), *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983) in support of the court's rationale. However, both *Doe* and *Mary Beth G.* are not applicable to the instant case because they both involved strip searches conducted at a police department, not a correctional facility in which detainees are placed in the general population. In fact, the Seventh Circuit in *Mary Beth G.* recognized this distinction and declined to apply *Bell* stating it was "not controlling because the particularized searches in that case were initiated under different circumstances." 723 F.2d at 1272-73.

37. This distinction was highlighted by the Ninth Circuit in *Bull v. City and County of San Francisco* which reasoned that:

> Because the purpose of the search policy at issue was to further institutional security goals within a detention facility, the principles articulated in *Bell v. Wolfish* … and *Turner v. Safley* …, govern our analysis. Cases that address searches of arrestees at the place of arrest, searches at the stationhouse prior to booking or placement in a holding cell, or searches pursuant to an evidentiary criminal investigation do not control our review, because housing in the general jail population and the issues attendant to effective detention facility administration are not factors in those cases.

*Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010).

38. The Ninth Circuit's decision in *Bull*, while not binding upon this Court, is persuasive authority as to the proper rationale to apply when analyzing the instant case and the constitutionality of the WCC policy in light of the U.S. Supreme Court's decision in *Bell*.

39. In *Bull*, the sheriff initiated a policy requiring the strip search of all arrestees who were admitted to San Francisco's general jail population for custodial housing. *Id*. at 966. Plaintiffs filed a class action lawsuit challenging the actual policy. *Id*. The district court held that the *policy* violated the Fourth Amendment rights of the persons searched and denied the sheriff qualified immunity. The sheriff brought an interlocutory appeal challenging the denial of qualified immunity. The Ninth Circuit Court of Appeals, sitting en banc, ruled that the policy did not violate plaintiffs' constitutional rights and reversed the district court's denial of the sheriff's motion for summary judgment based upon qualified immunity. *Id*.

40. *Bull* is similar to the instant case in several respects: (1) the written strip search policy is similar; (2) the plaintiffs challenged the constitutionality of the policy itself - not possible violations of the policy; (3) both are correctional facilities in which the purpose of the policy is to further institutional security goals – not police departments; and (4) both involved detainees placed into general population - not temporary holding cells. *Id*. at pp. 966 - 972.

41. In *Bull*, the Ninth Circuit overruled its prior decisions in *Thompson v. City of Los Angeles*, 885 F2d 1439 (9th Cir. 1989) and *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984). In

doing so, the court addressed four reasons why its prior decisions failed to comply with *Bell,* and how it mistakenly substituted its judgment for that of the corrections facility officials, contrary to the holding in *Bell*. *Bull*, 595 F.3d at 978 citing *Bell*, 441 U.S. at 540 n. 23, 99 S.Ct. 1861. These "errors" addressed in *Bull* are instructional on the analysis in which this Court should apply *Bell* to the instant case.

42. First, and perhaps most importantly, the court in *Bull* determined that its prior decision that strip searches of arrestees heading into the general population must be based on individualized suspicion was inconsistent with *Bell*. *Id*. The *Bull* court reasoned that the Supreme Court in *Bell* "did not require MCC officials to consider the individual characteristics of the persons subject to the strip search policy. Nor did the court require MCC officials to articulate their suspicions that a particular person subject to the policy was smuggling contraband. Rather, the Supreme Court upheld the policy of strip searching all persons who had contact visits as categorically reasonable under the circumstances in the detention facility." *Id*. citing *Bell*, 441 U.S. at 559-60, 99 S.Ct. 1861. The Supreme Court declined to impose an individualized suspicion requirement. *Id*.

43. The court also determined that it erred in concluding that arrestees charged with only minor offenses "posed no security threat to the facility." *Bull,* 595 F.3d at 978. The MCC housed a wide range of individuals including witnesses in protective custody and persons detained pursuant to contempt orders. These individuals were included within the class of plaintiffs that challenged the strip search policy. *Bell* did not require MCC officials to modify the strip search policy based upon whether a detainee had been charged with a serious or minor offense. *Id*. citing *Bell*, 441 U.S. at 524, 526 n. 5, 99 S.Ct. 1861.

44. A third error was determining that a record of, for instance in *Giles*, eleven instances of smuggling was insufficient to demonstrate a smuggling problem. *Id.* at 979. *Bell* did not require officials to demonstrate a lengthy history of multiple incidents of smuggling. In *Bell,* MCC officials determined that, in their professional judgment, strip and visual cavity searches after contact visits were necessary for deterrence as well as detection of contraband. *Id.*, citing *Bell*, 441 U.S. at 558, 99 S.Ct. 1861. The Supreme Court determined that this reasoning was not "irrational or unreasonable" and upheld the strip search policy as constitutional even though the MCC had detected only one incident of contraband smuggling. *Id.*, citing *Bell*, 441 U.S. at 559 n. 40, 99 S.Ct. 1861.

45. Finally, the court believed it erred by assuming that a strip search policy could not have a deterrent effect on persons who have been arrested and are being introduced into the general population for the first time, as opposed to detainees who are already in the jail population and are engaging in contact visits. *Id*. at 979. In both scenarios, the individuals have access to contraband and can conceal dangerous items on their person. The attempts to distinguish *Bell* on the ground that "arrestees do not ordinarily have notice that they are about to be arrested, and thus an opportunity to hide something" and therefore, are less likely to hide contraband on their person than persons already in the jail who engage in contact visits was unpersuasive. *Id*.

46. As the Eleventh Circuit in *Powell* reasoned:

Not everyone who is arrested is surprised, seized, and slapped into handcuffs without a moment's notice. Some people surrender when they are notified that a warrant for them is outstanding, some have notice that officers are coming to arrest them, and those persons arrested after a vehicle stop, may have time to hide items on their person before the officer reaches the car door. There are also those who deliberately get themselves arrested.

*Id.* at 980 citing *Powell v. Barrett*, 541 F.3d 1298, 1313 (11th Cir. 2008 )(en banc).

13

47. The Ninth Circuit disagreed with other circuits that have held strip searches of arrestees entering the general jail population per se unreasonable unless the officials have individualized reasonable suspicion that arrestees are smuggling contraband. *Id*. at 980. The court believed that:

> [t]his reasoning is inconsistent both with the general principles enunciated in *Bell* and *Turner*, and with the specific application of those principles to the strip search at issue in *Bell*. Moreover, these decisions are inconsistent with the Supreme Court's warning that Federal Courts must avoid substituting their judgment for the professional expertise of corrections officials in determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion.

*Id*. at 980.

48. The *Bull* court further noted that although federal courts may disagree with the judgment of corrections officials about the means to ensure safety and security, the Supreme Court's "decisions have time and again emphasized that this sort of unguided substitution of judicial judgment for that of the expert prison administrators on matters such as this is inappropriate." *Id*. at 980.

49. The rights of arrestees placed in custodial housing with the general population "are not violated by a policy or practice of strip searching each one of them as part of the booking process, provided that the searches are no more intrusive on privacy interests than those upheld in the *Bell* case." *Bull* does not require reasonable suspicion before a search. *Bull* citing *Powell*, 541 F.3d at 1314. (The Eleventh Circuit sitting en banc.)

50. In *Powell*, the Eleventh Circuit, sitting en banc, and applying *Bell*, granted the defendants' motion to dismiss ruling that the practice of conducting full body visual strip searches on all jail detainees placed into general population did not violate the Fourth Amendment. 541 F.3d at 1300.

51. The Eleventh Circuit reasoned that:

> The *Bell* decision, correctly read, is inconsistent with the conclusion that the Fourth Amendment requires reasonable suspicion before an inmate entering or re-entering a detention facility may be subjected to a strip search that includes a body cavity inspection. And the decision certainly is inconsistent with the conclusion that reasonable suspicion is required for detention facility strip searches that do not involve body cavity inspections.

*Id*. at 1307.

## **CONCLUSION**

52. Defendants simply request this Court to follow U.S. Supreme Court precedent and rule that the Winnebago County Corrections' policy is constitutional for detainees placed into general housing. This ruling is not contrary to other Northern District or Seventh Circuit decisions because those cases are not directly analogous to this case and do not apply. Such a ruling recognizes errors addressed in *Bull*, and ensures that *Bell* is properly applied.

> Respectfully submitted,
>
> s/ William B. Oberts_____
> One of the attorneys for Defendants

Michael J. Meyer, Esq. - ARDC #6193712
William B. Oberts, Esq. - ARDC #6244773
TRIBLER, ORPETT & MEYER, P.C.
225 W. Washington, Suite 1300
Chicago, Illinois 60606
(312) 201-6400
wboberts@tribler.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **Defendants' Motion for Judgment Pursuant to Rule 12(c)** was served upon:

| *Attorneys for Plaintiffs* | *Attorneys for Winnebago County* |
|---|---|
| James R. Fennerty<br>James R. Fennerty & Associates, LLC<br>36 S. Wabash Avenue<br>Suite 1310<br>Chicago, IL 60603<br>(312) 345-1704<br>(312) 422-0708 – *fax*<br>fennertylaw@yahoo.com<br><br>Thomas G. Morrissey<br>Thomas G. Morrissey Ltd.<br>10249 S. Western Ave.<br>Chicago, Il 60643<br>(773) 233-7900<br>tgmlaw@ameritech.net<br><br>Kenneth N. Flaxman<br>Kenneth N. Flaxman P.C.<br>200 S. Michigan Ave.<br>Suite 1240<br>Chicago, IL 60604<br>(312) 427-3200<br>knf@kenlaw.com<br>ecf@mail.abisoft.org | Gregory M. Minger<br>Winnebago County State's Attorney<br>Civil Division<br>400 W. State Street<br>Suite 619<br>Rockford, IL 61101<br>(815) 319-4712<br>(815) 319-4798 - *fax*<br>gminger@co.winnebago.il.us |

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 1300, Chicago, IL 60606, prior to 5:00 p.m. on May 21, 2010, with proper postage prepaid.

                                                    s/ William B. Oberts_____
                                                    an Attorney